**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **RUPERT TOVAR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 5:15-cv-00355** |
| | § | |
| **LUNA CAR CENTER, LLC and** | § | **JURY DEMANDED** |
| **SOHAIL MOHAMMED** | § | |
| | § | |
| **Defendants.** | § | |

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Rupert Tovar, files this lawsuit against Defendants Luna Car Center, LLC and Sohail Mohammed to recover unpaid overtime wages as well as damages as a result of retaliation in violation of the Fair Labor Standards Act and for cause of action would show the following:

## A. NATURE OF CLAIMS

1. This is an action filed under the Fair Labor Standards Act, 29 U.S.C. §201, et seq. ("FLSA") to correct unlawful employment practices, including Defendants' failure to abide by wage and hour laws. This action seeks to recover the unpaid overtime wages, and other damages owed by Defendants to Plaintiff.

## B. JURISDICTION AND VENUE

2. Plaintiff's claim arises under the FLSA. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) because a substantial part

of the events or omissions giving rise to Plaintiff's claim occurred in this district.

## C. The Parties

4. Plaintiff Rupert Tovar is an individual residing in Bexar County, Texas. Plaintiff was employed by Defendants within the meaning of the FLSA.

5. Defendant Luna Car Center is a Domestic Limited Liability Company in Texas engaged in commerce and subject to the FLSA. Luna Car Center, LLC may be served through its registered agent, Sohail Mohammed, 147 East Commerce Street, San Antonio, Texas 78205.

6. Defendant Sohail Mohammed is a natural person and an owner and/or officer of Defendant Luna Car Center, LLC and may be served with process at 147 East Commerce Street, San Antonio, Texas 78205.

7. Defendants were at all times pertinent to the allegations in this complaint an "employer" within the meaning of 29 U.S.C. § 203(d) of Plaintiff.

## A. Facts

8. Defendant Luna Care Center, LLC is a Texas automobile dealership in the business of selling automobiles, exporting automobiles outside of the country, servicing automobiles as well as financing vehicle purchases.

9. Defendant Sohail Mohammed is an owner and/or officer of Defendant Luna Car Care, LLC and is responsible for controlling and overseeing the day-to-day operations of the company. Defendant Sohail Mohammed had the authority to hire and fire employees.

10. Plaintiff was employed by Defendants within the meaning of 29 U.S.C. § 203(g) as a porter. Plaintiff's job function was to clean and detail vehicles and preparing for shipment vehicles intended for delivery outside of the United States. This included

cleaning headlights, windshields as well as detailing automobile interiors and exteriors. In preparation for shipment, Plaintiff would also prepare the interiors by wrapping the interiors in plastic.

11. No part of Plaintiff's job functions as an employee of Defendant included sales of vehicles.

12. Plaintiff was neither a mechanic nor a partsman for Defendant.

13. Plaintiff was not a supervisor nor did he have the authority to hire and fire. Plaintiff did not handle employee scheduling nor did any employees report directly to Plaintiff.

14. As an employee of Luna Car Center, LLC, Plaintiff was engaged in commerce or in the production of goods for commerce (individual coverage), or was employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA (enterprise coverage), 29 U.S.C. § 203.

15. For individual coverage, Plaintiff must allege facts giving rise to a reasonable inference that he was engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. §§ 206(a), 207(a).

16. Plaintiff had regular contact with commerce in that he performed his duties as a detailer/porter on vehicles that were from within and out-of-state, as evidenced by out-of-state license plates on some of the vehicles at the time that Defendants purchased said vehicles for future resale.

17. Additionally, Defendants regularly export cars to destinations outside of the Unites States.

18. Preparation for such shipments required regular contact by Plaintiff with vehicles that had previously been transported as part of commerce and that would in the future be

transported for shipment outside of the country. The regular contact by Plaintiff included but was not limited to cleaning, detailing and wrapping the vehicle interiors in plastic in preparation for international shipping.

19. Under the FLSA, an enterprise can be one engaged in commerce or in the production of goods for commerce if it is "an enterprise that…has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]" See 29 U.S.C. § 203(s)(1).

20. "Commerce" for purposes of the FLSA "means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C § 203(b).

21. Defendant falls into the enterprise coverage definition of the FLSA in that it has two or more employees engaged in interstate commerce.

22. Specifically, Defendants have employees utilizing interstate telephone and broadband communications for the commercial purposes of Defendants' enterprise.

23. Additionally, Defendants have purchased vehicles with out-of-state license plates for the purpose of reselling said vehicles.

24. Defendant has two or more employees engaged in sales or other positions to facilitate such purchases.

25. Furthermore, Defendants would regularly export cars to customers out-of-state and/or out of the country.

26. Defendants would task employees with preparing vehicles for international shipping. The prepared vehicles would then be shipped to Houston, Texas via interstate highways from which they would eventually reach an international port for shipment outside of the State and country.

27. Defendant is engaged in commerce under the meaning of the FLSA in that it has two or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

28. Specifically, items used by Plaintiff and other employees for servicing, cleaning, or preparing vehicles for shipment included tools, equipment, and cleaning supplies or other articles necessary for performing their duties. Such tools, equipment, and cleaning supplies or other articles had previously been moved in, or produced for, commerce and Defendants had Plaintiff and other workers handling these materials for the commercial purposes of Defendants' enterprise.

29. Additionally, the vehicles which Defendants had employees work on or handle, had previously been moved in, or produced for, commerce and Defendants had two or more employees handling these materials for the commercial purposes of Defendants' enterprise.

30. Defendants are engaged in the business of automotive sales, exporting vehicles, automotive servicing, purchase financing and other related activities.

31. Upon information and belief, Defendant has between 150 and 300 vehicles in its inventory at any given time.

32. Upon information and belief, Defendant has a retail floor plan of approximately $4 million dollars.

33. Aside from revenue derived from sales, Defendant also receives revenue from exporting and servicing vehicles as well as financing vehicle purchases and other related activities.

34. Between automobile sales, exporting, automobile servicing, automotive financing and other related activities of the enterprise, Defendant's gross volume of sales made or business done was not less than $500,000 for the previous twelve (12) months.

35. Plaintiff first worked for Defendant from May 3, 2013 until September 17, 2013. At the time he began working for Defendant, Plaintiff was earning $8.50 per hour and working approximately 40 hours per week.

36. On approximately June 10, 2013, Defendant Mohammed informed Plaintiff that moving forward, he would be paid a flat-rate of $500 per week and that his hours would be 9:00am to 8:00pm, Monday through Saturday. Although he was told he would receive an hour for lunch everyday, this rarely happened as he was usually asked to cut his lunch hour short or eat his lunch while he continued to detail automobiles.

37. After the change in compensation, and despite the fact that Plaintiff routinely worked approximately 60-66 hours per week every week, Plaintiff never received any extra compensation for any hours worked beyond 40 in a 7-day period. After working under the new salary structure for approximately three months, Plaintiff left the employment of Luna on approximately September 17, 2013.

38. Approximately one year later and in need of employment, Plaintiff returned to work for Defendant on September 8, 2014.

39. When he returned to work, Plaintiff was hired at $600 per week with hours from 9:00am to 8:00pm, Monday through Saturday. Once again, Plaintiff routinely worked 60-66 hours per week every week, though he never received any extra compensation for any

hours worked beyond 40 in a 7-day period. Just as before, he was told he would receive an hour for lunch everyday, though he was usually forced to cut his lunch hour short or eat his lunch while he continued to detail automobiles.

40. Although Plaintiff's compensation was based on salary, if he missed a day of work, Defendant would deduct this time from Plaintiff's paycheck.

41. Toward the latter part of 2014 and into the beginning of 2015, Plaintiff began asking to be transferred back to an hourly rate so that he could be compensated for all of the hours he was working. His request was denied and he was simply told that his salary was designed to compensate him for all hours worked regardless of the number of hours actually worked.

42. Shortly after, Plaintiff came across labor and wage information that confirmed that he should have been receiving overtime pay for hours worked beyond 40 in a 7-day work week. On or about February 16, 2015, Plaintiff met with Defendant Mohammed to discuss what he had discovered and complain about his unpaid overtime. After the meeting, Plaintiff was told to go home and come back the next day for further discussions. The following day, on or about February 17, 2015, Plaintiff was notified that his services were no longer needed and was terminated without just cause.

43. The work performed by Plaintiff was with Defendants' knowledge. Defendants set Plaintiff's schedule, assigned work, and supervised his work.

44. Defendants' violations of the FLSA were committed knowingly, willfully, and/or with reckless disregard to Plaintiff's rights.

## E. PLAINTIFF'S ALLEGATION OF FLSA OVERTIME VIOLATIONS

45. Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

46. As automobile porter/detailer, Plaintiff was legally entitled to be paid at one-and-one-half times his regular rate of pay for hours worked in excess of forty (40) hours per each seven (7) day workweek.

47. Defendants failed to pay Plaintiff at one-and-one-half times their regular rate of pay for hours worked in excess of forty (40) hours per each seven (7) day workweek in direct violation of the FLSA.

48. As a result, Plaintiff did not receive the compensation he was legally entitled to receive.

49. Plaintiff is entitled to an amount equal to all unpaid overtime wages.

50. Plaintiff is entitled to liquidated damages in an amount equal to his unpaid overtime wages as a result of Defendants' failure to comply with the FLSA.

51. Plaintiff is entitled to recover all reasonable attorney's fees and costs incurred in this action.

### F. PLAINTIFF'S ALLEGATION OF FLSA RETALIATION

32. Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

33. Section 215 of the Fair Labor Standards Act (FLSA) states it is a violation to discharge or in any other manner discriminate against any employee because such employee has made a complaint covered by the FLSA. *See* 29 U.S.C. § 215(a)(3).

34. Plaintiff's termination as a result of making FLSA-related complaints was a violation of Section 215 of the FLSA and constitutes retaliation.

### G. JURY DEMAND

35. Plaintiff demands a jury on all issues to be tried in this matter and herein submits the jury fee.

## H. PRAYER

For the reasons set forth above, Plaintiff respectfully asks that this Court grant the following relief:

a. Judgment awarding Plaintiff all unpaid overtime wages, liquidated damages, attorneys' fees and costs under the FLSA;

b. Back pay from the date of his termination to present;

c. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

d. An award of pre-judgment and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

e. All such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,




/s/ *Alfonso Kennard, Jr.*

Alfonso Kennard, Jr.
Texas Bar No. 24036888
2603 Augusta Drive, 14th Floor
Houston, Texas 77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
alfonso.kennard@kennardlaw.com
**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

**OF COUNSEL FOR PLAINTIFF:**




Arnoldo J. Rodriguez
Texas Bar No. 24083756
85 N.E. Loop 410, Ste. 603
San Antonio, Texas 78216
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
aj.rodriguez@kennardlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2015, a true and correct copy of Plaintiff's First Amended Complaint was served via the Court's CM/ECF System to all counsel of record.

*/s/ A.J. Rodriguez*
A.J. Rodriguez